UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVENS CLAUDE,                          :           CASE NO. 3:25-CV-383 (KAD)
    *Petitioner*,                      :
                                        :
v.                                     :
                                         :
WARDEN, FCI DANBURY,                   :           JULY 22, 2026
    *Respondent*.                     :

MEMORANDUM OF DECISION
RE: [1] PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Evens Claude ("Petitioner") is a prisoner currently confined at the Ashland Federal Correctional Institution in Ashland, Kentucky ("FCI Ashland"), in the custody of the Bureau of Prisons ("BOP").[1]  On March 17, 2025, while Petitioner was incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), he filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  *See* Pet., ECF No. 1.  In the Petition, he challenges: (1) a disciplinary finding and the procedural process and sufficiency of evidence used to charge and find him guilty of a Code 108 violation ("Ground One"); and (2) the resulting sanctions he received in relation to other inmates ("Ground Two").  *See id.*  Petitioner requests that this Court vacate his sanctions and expunge his incident report, or in the alternative, reduce his sanctions and impose only a 41-day loss of Good Credit Time ("GCT").  *Id*. at 8.

For the reasons set forth below, Ground One of the Petition is **DENIED** and Ground Two of the Petition is **DISMISSED** without prejudice.

---

[1]  The Court may "take judicial notice of relevant matters of public record."  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).  A recent search of the BOP Inmate Locator confirms that Petitioner is currently housed at FCI Ashland. *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited July 15, 2026).

**Background**

On August 29, 2014, Petitioner was convicted in the United States District Court for the Eastern District of Pennsylvania on charges of conspiracy, bank fraud, access device fraud, aggravated access device fraud, and uttering counterfeit currency. *See* OSC Resp., Declaration of Cheryl Magnusson ("Magnusson Decl."), ECF No. 12-1 ¶ 5. Petitioner was sentenced to a term of imprisonment of 232 months followed by five years of supervised release. *Id.* Petitioner was incarcerated at FCI Danbury at the time he filed the instant Petition, *see* ECF No. 1, and on November 18, 2025, Petitioner filed a notice of change of address advising the Court that he had been transferred to FCI Ashland, *see* ECF No. 14. The BOP website indicates that Petitioner's projected release date is April 6, 2029.[2]

Disciplinary Hearing

According to a report from BOP staff member Officer Carr, on March 18, 2024, while Petitioner was incarcerated at FCI Danbury, a K-A unit officer notified Special Investigative Services ("SIS") that he believed an inmate was in possession of a cellphone, after a white USB phone charger had been recovered off a bunk the inmate had been sitting on. *See* Disciplinary Hearing Officer Report ("DHO Report"), ECF No. 12-2 at 3. A review of the pertinent CCTV footage showed that when the K-A officer, who was conducting his regular rounds, approached inmate Melvin Stinson and gave him a direct order to stand up, Stinson placed a black cellphone with white headphones in his right pants pocket. *Id*. Stinson then took the cellphone out of his right pants pocket and threw it to Petitioner, who tried to catch the cellphone, but dropped it. *Id*.

The footage then shows Petitioner kicking the cellphone under a bookcase, and placing

---

[2] Respondent submits that Petitioner's current projected release date, considering both GCT and First Step Act time credits, is April 6, 2028. *See* Magnusson Decl. at ¶ 5. Such discrepancy is immaterial to the Court's resolution of the instant Petition.

white headphones on top of the bookcase. *Id*. Once the K-A officer left the unit with inmate Stinson, the footage shows that Petitioner took the cell phone from under the bookcase, along with the headphones that were on top of the bookcase, and placed them in front of his groin area and walked towards the window. *Id*.

Once this footage was reviewed, BOP staff went to search for the cellphone. *Id*. Officer Carr approached Petitioner and asked him where the cellphone was, and Petitioner replied, "I don't have it, do what you got to do." *Id*. Petitioner was placed in restraints and escorted to the Special Housing Unit. *Id*. The cellphone was never recovered. *Id*.

Because of this incident, Petitioner was charged with a violation of BOP Code 108, Possession of a Hazardous Tool.[3] On March 19, 2024, Petitioner received written notice of the charge and a copy of the relevant incident report, and on March 21, 2024, Petitioner was advised of his rights before a staff member. DHO Report at 1. The ensuing DHO hearing occurred on April 4, 2024, and Petitioner waived his right to a staff representative. *Id*. The DHO Report reflects that Petitioner had his due process rights reviewed by the DHO, and that Petitioner stated that he understood his rights. *Id*. at 2. Petitioner did not raise any procedural issues, request a staff representative, or present written documentation as evidence. *Id*. During the hearing, Petitioner denied the Code 108 charge, and stated, in summary, "[i]t got thrown at me. I was scared. I didn't want to touch it. I didn't want to pay for it by loosing [sic] it either. Some dude took it from me after I took it." *Id*. at 1. Petitioner also used inmate Stinson as a witness, who testified, "I threw the phone on the stage floor. I didn't even know he was there." *Id*. at 2.

---

[3] "Hazardous tool" is a "tool[] most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g*., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device." 28 C.F.R. § 541.3, Table 1.

As evidence, Disciplinary Hearing Officer ("DHO") Amico considered the Incident Report, Inmate Rights at Discipline Hearing, and Notice of Discipline Hearing forms, the CCTV footage, Officer Carr's written account of the incident, and Petitioner's and inmate Stinson's statements. *Id*. at 2–3. DHO Amico concluded that Petitioner's statement did not relieve him of responsibility, and instead showed that Petitioner was attempting to minimize his actions. *Id*. at 3. DHO Amico also found that the video footage was consistent with Officer's Carr's version of events. *Id*. DHO Amico further concluded that, notwithstanding inmate Stinson's testimony that he threw the cellphone on the floor, the video footage showed that Stinson threw the cellphone to Petitioner, and that Stinson looked directly at Petitioner before doing so. *Id*. DHO Amico also found that Petitioner "clearly chose to further conceal the phone" by placing it in front of his groin area. *Id*. DHO Amico also noted that Petitioner's assertion that he did not want to touch the cellphone was contradicted by the footage which showed Petitioner trying to catch the cellphone, kick it under the bookcase, and then place it in front of his groin. *Id*.

After considering all of the evidence, DHO Amico determined that Petitioner's claims were meritless, that Petitioner had not presented sufficient evidence to refute the charge, and that Petitioner had indeed possessed a hazardous tool in violation of Code 108. DHO Amico sanctioned Petitioner to a 41-day disallowance of GCT; a 93-day loss of non-vested GCT; 60 days of disciplinary segregation; a six-month loss of commissary privileges; and a six-month loss of visitation privileges. OSC Resp. at 4. DHO Amico explained the reason for imposing the sanctions, namely, to let Petitioner know he would be held responsible for his actions at all times, and that possessing a hazardous tool in any correctional institution seriously jeopardizes the security of the institution and poses a threat to the ability of staff to provide for the safety and

security of staff, inmates, and the general public.  DHO Report at 4.  The DHO Report was signed by DHO Amico on April 10, 2024, and delivered to Petitioner on April 29, 2024.  *Id*.

**Standard of Review**

Section 2241 affords relief only if a habeas petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A petition filed pursuant to Section 2241 may be used to challenge the execution of a prison sentence.  Thus, Section 2241 petitions are appropriately used to challenge conditions of confinement or sentence calculations.  *See Levine v. Apker*, 455 F.3d 71, 77–78 (2d Cir. 2006).  Execution of a sentence also includes prison disciplinary hearings, so a Section 2241 petition is the proper means to challenge a prison disciplinary hearing.  *Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004).  Before filing a habeas petition pursuant to Section 2241, prisoners are required to exhaust internal grievance procedures.  *See Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).

**Jurisdiction**

Prior to determining whether dismissal or denial of the Petition is proper, the Court must first examine whether it retains jurisdiction over the Petition following Petitioner's transfer to FCI Ashland.  *See Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 328 (2d Cir. 2005) ("[W]here jurisdiction is questionable [a court is] obliged to examine the question *sua sponte*"); *Garcia v. Warden, FCI Danbury*, No. 3:25-CV-387 (SRU), 2025 WL 1927909, at *2 (D. Conn. July 14, 2025) (first examining jurisdiction over habeas petition before considering the merits of that petition).

Habeas jurisdiction is "not jurisdictional in the sense of a limitation on subject-matter jurisdiction."  *Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011) (quoting *Rumsfeld*

5

*v. Padilla*, 542 U.S. 426, 451 (2004) (Kennedy, J., concurring)).   There are "two traditional requirements for a federal court to entertain a habeas petition: that the petition be filed in the district of confinement and that it name the petitioner's immediate custodian." *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025).  "[H]abeas jurisdiction attaches on the initial filing for habeas relief, and a district court retains jurisdiction even when a petitioner is transferred after filing to the custody of a different custodian in a different judicial district." *Dailey v. Pullen*, No. 3:22-CV-1121 (SRU), 2023 WL 3456696, at *2 (D. Conn. May 15, 2023) (citing *Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 26 n.1 (2d Cir. 2019) (summary order); *Middleton v. Schult*, 299 F. App'x 94, 95 n.1 (2d Cir. 2008) (summary order)).

When Petitioner filed the Petition on March 17, 2025, he was confined at FCI Danbury in Connecticut.  *See* Pet. at 1. The Petition properly named the Petitioner's custodian at the time, "Warden FCI Danbury." *Id*.  The Petition was also properly filed in the District of Connecticut, which is the judicial district where FCI Danbury is located.  Accordingly, this Court initially obtained jurisdiction over the Petition, and it retains jurisdiction even though the BOP has since transferred Petitioner to FCI Ashland.  *See Padilla*, 542 U.S. at 441 ("[W]hen the Government moves a habeas petitioner after []he properly files a petition naming h[is] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").

However, merely retaining habeas jurisdiction over the Petition is a necessary but insufficient condition alone to award the relief that Petitioner seeks here, namely, ordering the BOP to expunge the Incident Report and vacate the sanctions that were imposed. Pet. at 8.  Indeed, a habeas petition must be "directed to the person having custody of the person detained," 28 U.S.C. § 2243, and that custodian must be within "reach[] by service of process[,]" *Braden v. 30th Jud.*

6

*Cir. Ct. of Kentucky*, 410 U.S. 484, 495 (1973).  Given that the BOP transferred Petitioner to FCI Ashland, the Petition is necessarily no longer "directed to" Petitioner's current custodian, and the Warden of FCI Ashland is not within "reach by service of process." *See, e.g.*, *Garcia*, 2025 WL 1927909 at *2 (Director of RRM New York was not "within 'reach by service of process.'").  Nevertheless, unlike cases in which a petitioner challenges conditions of confinement at a specific facility, and thus seeks injunctive relief against an immediate custodian, here Petitioner seeks relief in the form of expungement of his disciplinary charge and revocation of the sanctions imposed.  That type of relief can be effectuated by the BOP generally, not any one warden specifically.  *See* 28 C.F.R. § 0.96(c), (g) (delegating authority to the BOP to compute sentences and designate an inmate's place of imprisonment or confinement).  "The District of Connecticut has the BOP 'within reach of its process,' and may therefore direct the writ to the BOP generally."  *Rivera-Perez v. Stover*, 757 F. Supp. 3d 204, 211 (D. Conn. 2024) (quoting *Ex Parte Endo*, 323 U.S. 283, 306–07 (1944)).

Accordingly, the Court may properly exercise jurisdiction over the Petition notwithstanding Petitioner's transfer.  *See, e.g.*, *Garcia*, 2025 WL 1927909 at *2 (concluding that the court could exercise jurisdiction over habeas petition where petitioner sought reinstatement of lost GCT credit as a result of sanctions, despite the BOP transferring petitioner from FCI Danbury to RRM New York); *Wilson v. Warden Flowers, FCI Danbury*, No. 3:25-CV-1357 (VDO), 2025 WL 3719411, at *3 (D. Conn. Dec. 23, 2025) (concluding that the court could exercise jurisdiction over habeas petition where petitioner sought relief in the form of application of FSA credits and release to a halfway house, despite the BOP transferring petitioner from FCI Danbury to FCI Allenwood Low).  Having established that the Court has jurisdiction over the Petition despite Petitioner's transfer to FCI Ashland, the Court will consider the merits of Petitioner's claims.

**Discussion**

In response to the Court's Order to Show Cause, Respondent contends that Ground One should be denied and dismissed because there was at least "some evidence" to support the Code 108 disciplinary finding, and Petitioner was otherwise afforded all the process that he was due throughout his disciplinary proceedings. OSC Resp., ECF No. 12. Respondent further argues that Ground Two should be denied and dismissed because Petitioner failed to exhaust his administrative remedies, or alternatively, the sanctions were appropriate and not excessive. *Id*. The Court agrees with Respondent.

Ground One – Disciplinary Challenge

Petitioner's challenge to his Code 108 violation is primarily derived from his claim that there was insufficient evidence to find him guilty of such a violation. However, the Court agrees with Respondent that there was at least "some evidence" to support the DHO's finding of a Code 108 violation. Moreover, to the extent Petitioner challenges the process used to find him guilty, the Court agrees with Respondent that Petitioner was afforded all the process that he was due.

The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Inmates deprived of GCT as a result of disciplinary proceedings are entitled to the minimum due process. *See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 453–54 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974). "[T]o comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary

action.'" *Williams v. Menifee*, 331 Fed. App'x 59, 60 (2d Cir. 2009) (quoting *Hill*, 472 U.S. at 454).

Judicial review of written findings required by due process is limited to determining whether the disposition is supported by "some evidence." *Hill*, 472 U.S. at 455. Specifically, there must be "reliable evidence" in the record that supports the disciplinary ruling. *See Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (construing "some evidence" as "reliable evidence" of inmate's guilt). Yet, determining whether this standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455–56. "This standard is extremely tolerant[,] and is satisfied if there is *any* evidence in the record that supports the disciplinary ruling." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (internal quotation marks omitted) (emphasis in original).

At the outset, though Petitioner does not appear to advance any such argument, for avoidance of doubt, the Court finds that Petitioner's procedural due process rights were not violated in connection with his Code 108 proceedings. Respondents have demonstrated that Petitioner received advance notice of his charge, was advised of his rights, and was given more than two weeks to prepare for the DHO hearing. OSC Resp. at 9. Petitioner was also given the opportunity to call a staff representative, though he waived that right. *Id.* Ultimately, Petitioner called inmate Stinson as a witness, and was allowed to give a statement in which he denied the charge. *Id.* Notably, Petitioner did not raise any procedural issues during the DHO hearing on April 4, 2024, and Petitioner received a copy of the DHO decision. *See id.* Accordingly, Petitioner

was duly afforded all the procedural protections required for a disciplinary proceeding. *See Hill*, 472 U.S. at 454.

Next, Petitioner asserts that there was no evidence to support his Code 108 charge of possessing a cellphone, and instead contends that he picked up the cellphone out of coercion or duress. However, such claims are contradicted by the record, and in any event, Petitioner's disciplinary findings were plainly supported by "some evidence." Indeed, in reviewing the Code 108 charge, DHO Amico considered the pertinent CCTV footage and found it was consistent with Officer Carr's initial report of the incident. DHO Report at 3. Particularly, upon reviewing the CCTV footage, DHO Amico found that: (1) inmate Stinson threw a cellphone to Petitioner and looked directly at him before doing so; (2) Petitioner chose to conceal the cellphone by trying to catch it, kicking it under a bookcase, and then hiding it in front of his groin area; and (3) Petitioner's statement that he did not want to pay for the cellphone if he lost it did not relieve Petitioner of responsibility for his conduct. *Id.* Moreover, the cellphone was never recovered. *See id.*

For his part, Petitioner provides no specific examples as to any purported coercion, other than a generalized claim that "if an inmate is around an item while it goes missing, this inmate will have to pay for it or face serious bodily injury if he can't pay." Pet. at 13. This argument is unavailing, not least because it wholly fails to refute the existence of "some evidence" to support DHO Amico's decision. *See, e.g.*, *Graff v. Sanders*, No. 12-CV-4407 (AN), 2012 WL 5870749, at \*6 (C.D. Cal. Sept. 28, 2012), *recommended ruling adopted*, 2012 WL 5870760 (C.D. Cal. Nov. 20, 2012) (DHO decision was based on "some evidence in the record," and complied with due process, despite testimony of witnesses regarding fear of retaliation from other inmates for declining to participate in the unlawful conduct). The Court is also not persuaded by Petitioner's argument that the object he "picked up off the floor was small . . . and he never had a chance to

10

examine it to verify" that it was a cellphone.  *See* Pet. Reply at 1, 9.  Indeed, this argument—which Petitioner did not even advance during the DHO hearing—is further negated by DHO Amico's review of the CCTV footage.  *See* DHO Report at 2.  In fact, although Petitioner claims that the object he picked up was not a cellphone, he offers no alternative as to what inmate Stinson threw at him, which resulted in a Code 108 charge.

For all of these reasons, the Court finds that there was at least some evidence in the record to support DHO Amico's disciplinary ruling, and that Petitioner was afforded all the procedural process that he was due.  Thus, Ground One of the Petition is DENIED.

Ground Two – Equal Protection Claim

In Ground Two, Petitioner claims that his punishment violated equal protection because, in his experience, "the DHO sanctions black people harsher than any other race."  Pet. Reply at 7. Nevertheless, the Court agrees with Respondent that Petitioner has failed to exhaust his administrative remedies with regard to this specific claim.  *See* OSC Resp. at 11–12.

Though Section 2241 does not expressly require exhaustion of state law or administrative remedies, decisional law has imposed such a requirement to accommodate principles of federalism.  *See Carmona*, 243 F.3d at 634 (noting that while Prison Litigation Reform Act ("PLRA") exhaustion requirement does not apply to habeas actions, exhaustion for a Section 2241 petition is still required under decisional law); *United States ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir. 1976).  The burden of demonstrating exhaustion of administrative remedies rests with the Section 2241 petitioner, *see Spring v. Schult*, No. 08-CV-531 (LEK), 2009 WL 3232183, at *1 (N.D.N.Y. Oct. 1, 2009), and a failure to exhaust administrative remedies "results in a procedural default."  *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (lack of exhaustion "results in a procedural default, which bars judicial review unless the petitioner

11

persuades the Court that the failure to exhaust should be excused") (citing *Carmona*, 243 F.3d at 634); *see also Woodford v. Ngo*, 548 U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default . . . ."). Thus, absent a showing of "cause and prejudice," a federal inmate is required to exhaust his administrative remedies before seeking habeas relief pursuant to Section 2241. *Carmona*, 243 F.3d at 634.

The Second Circuit has identified four bases to excuse administrative exhaustion in the habeas context: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)). However, the interests of judicial economy, accuracy, and administrative autonomy are best served by requiring a petitioner to utilize the administrative process prior to obtaining judicial review. *See Carmona*, 243 F.3d at 634. Indeed, "[f]ollowing the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds." *Id.*

Respondent submits that Petitioner failed to exhaust his administrative remedies before filing the instant Petition, given that his appeal to BOP's Central Office: (a) solely challenges the process afforded and the evidence relied upon by the DHO in finding Petitioner guilty of a Code 108 violation; and (b) does not otherwise raise a challenge to the severity of his sanctions, or an equal protection argument. OSC Resp. at 11–12. In his reply, Petitioner concedes that he did not exhaust his administrative remedies regarding whether his sanctions violated equal protection. Pet.

Reply at 5. Instead, Petitioner asserts that it would have been futile for him to exhaust this issue, insofar as the BOP will not respond to two separate claims in the same administrative remedy, and because the issue has otherwise already been predetermined and foreclosed by federal regulations. *Id*. Once again, the Court agrees with Respondent.

Ultimately, "[t]here is a high threshold for a finding of futility," and Petitioner's assertions plainly fail to satisfy this high threshold. *Lallave v. Martinez*, 609 F. Supp. 3d 164, 180 (E.D.N.Y. 2022) (citing *Beharry*, 329 F.3d at 62). Indeed, the futility threshold is not satisfied simply because "an agency has previously rejected a certain claim," and "mere allegation[s] of futility due to the BOP's alleged national policy [do] not clear the bar." *Patel v. Flowers*, No. 3:25-CV-877 (SVN), 2025 WL 3140742, at *4 (D. Conn. Nov. 10, 2025); *see also Diamond v. Loc. 807 Lab. Mgmt. Pension Fund*, 595 F. App'x 22, 25 (2d Cir. 2014) (summary order) (holding that plaintiff's "conclusory allegations . . . fail to sufficiently allege futility") (citation omitted). Moreover, Petitioner has otherwise failed to demonstrate either that the BOP does, in fact, have a policy or practice of only responding to one claim per administrative remedy, or that, even if it did, he could not have filed a separate administrative remedy pertaining to his equal protection claim. Accordingly, the Court finds that Petitioner has inexcusably failed to exhaust his administrative remedies, and Ground Two of the Petition must be **DISMISSED** without prejudice.

**Conclusion**

For all of the foregoing reasons, Ground One of the Petition for Writ of Habeas Corpus is **DENIED**, and Ground Two of the Petition is **DISMISSED** without prejudice. The Clerk of Court is instructed to close this case. Any appeal from this order would not be taken in good faith.

13

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of July 2026.

 _/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

14